# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KATHERYN HOTARD, ET AL.**

**VERSUS**

**SAM'S EAST, INC., ET AL.**

**CIVIL ACTION**

**NO. 19-304-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment on Behalf of Sam's East, Inc.* ("*MSJ*") (Doc. 49) filed by Defendant Sam's East, Inc. ("Sam's"). Plaintiffs Katheryn Hotard and Albert Hotard, Jr. ("Plaintiffs") oppose the motion. (Doc. 55.) Sam's has filed a reply. (Doc. 58.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *MSJ* is granted.

## I. Relevant Factual Background

### A. Introduction

This is a slip and fall case. In short, on or about April 7, 2018,[1] Plaintiff Katheryn Hotard allegedly fell in the parking lot of the Sam's Club store which was located at 1044 N. Mall Drive, Baton Rouge, LA, and which was owned by Defendant Sam's. (*See* Roberts Aff. ¶¶ 2–4, Doc. 56-2.)

Preliminarily, the Court notes that Plaintiffs violated Middle District of Louisiana Local Civil Rule 56. This rule states in relevant part, "The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of

---

[1] It is unclear from the record whether the fall occurred on April 7th or 8th. (*Compare* Roberts Aff. ¶ 4, Doc. 56-2, *with SUMF* ¶¶ 3–6, Doc. 49-2.) However, this is not material to the present ruling.

material facts and *unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule*." M.D. La. LR 56(c) (emphasis added). Local Civil Rule 56 further provides, "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." M.D. La. LR 56(f).

Here, though Sam's complied with its obligation and submitted a *Statement of Uncontested Material Facts in Support of* [*MSJ*] (Doc. 49-2) ("*SUMF*"), Plaintiffs failed to file any opposing statement. Further, while Plaintiffs object to certain paragraphs of the *SUMF* in their opposition (Doc. 55 at 1–2), they failed to provide any record citations with these objections (or anywhere else in their opposition, for that matter). As a result, all of the statements in the *SUMF* shall be deemed admitted for purposes of this motion.

Further, Plaintiffs refer to certain testimony and evidence in their brief, but, again, they fail to provide any record citations to any such evidence. As the Fifth Circuit has said:

> When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L.Ed. 2d 59 (1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458; [*Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996)]; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L.Ed.2d 127 (1994); *Skotak*, 953 F.2d at 916 n. 7; *see also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Because [Plaintiff] did

> not identify any evidence of damages in his summary judgment
> response, the evidence was not properly before the district court and
> will not be considered here.

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Thus, "[w]ithout specific citations to the

record, the Court will not consider this [evidence]." *Robertson v. Home Depot, Inc.*, No. 14-806,

2017 WL 1088091, at *2 (M.D. La. Mar. 22, 2017) (deGravelles, J.) (disregarding portions of

Plaintiffs' deposition that had not been stricken).

### B. Mrs. Hotard's Account

Thus, it is undisputed that Mrs. Hotard could not recall what caused her to fall on April 8,

2018. (*SUMF* ¶ 4, Doc. 49-2.) This is consistent with Mrs. Hotard's interrogatory responses; when

asked to "[s]tate in detail and describe with specificity how this accident occurred," she responded:

> On April 8, 2018 [sic] arrived at Sam's started walking across
> parking lot when I went down with force all at once, a lady
> approached me checking my head for bruises or blood. Someone
> went and got the manager, who stood near me with arms folded and
> did not speak a word, he waited for the ambulance. I was put into
> the ambulance and driven to Baton Rouge General Hospital, was
> there the entire day seeking Dr. Waguespack and having x-ray's
> taken.

(Doc. 49-6 at 4.) Later, Plaintiffs were asked to indicate what they contended Mrs. Hotard fell on,

and they responded:

> - Residue from trees nearby and avoiding cars in parking lot
> - Cracks in the slab of the parking lot
> - Small twigs or gravel and/or other environmental debris
> - This response may be supplemented as discovery is ongoing

(*Id.* at 11.)

But, at Mrs. Hotard's deposition, she was asked what she fell on, and she said:

> I was – I was – well, with me being there, I was kind of
> watching the traffic because I was trying to get in the store. But I
> don't know. It was under the tree. I just – when I felt something on

my shoe, I immediately hit the ground. I don't know if it was the pavement had some kind of that black tar, if it was a twig, because it was near the tree. And it happened so fast, honestly, I don't remember. But my shoe left the ground and 170 pounds hit it before it – it was so quick, I can't tell you what it was.

(Mrs. Hotard Dep. 33–34, Doc. 49-4 at 6–7.) She was also asked if there were any "twigs or branches" on the ground, and she replied there was "debris on the ground" like a "fir-type tree . . . like with needles and stuff, some type of fir." (*Id.* at 39–40.) She said this looked like "every ordinary debris, little pieces of twig. I think it had some little cone-type things because it looked like that was on the ground, but just regular debris." (*Id.* at 40.) She then said:

Q. When did you first notice that debris?

A. When I was approaching the tree, I saw it, but it didn't – it didn't bother me because I walk all the time and it wasn't nothing I would have been afraid to walk through. But as to say exactly what it was, I really can't tell you.

Q. So you're not sure if you actually tripped on that debris that you're referring to?

A. Correct. Yes.

(*Id.* at 40–41.)

Finally, Mrs. Hotard saw a crack in the pavement that "had some black tar in it." (*Id.* at 40.) However, she did not recall whether she tried to walk around it or over it. (*Id.* at 41.)

### C. Other Evidence Related to the Fall

Additionally, it is undisputed that Mr. Hotard did not witness Mrs. Hotard trip on the day of the accident. (*SUMF* ¶ 6, Doc. 49-2.) He also did not see a crack or anything on the ground that may have caused her to trip. (*Id.* ¶ 7.)

Further, on the day in question, Donald Roberts was working at the Sam's Club store in question as a Specialty Manager. (Roberts Aff. ¶¶ 2–3, Doc. 56-2.) Roberts saw Mrs. Hotard

sitting on the ground near the handicap parking area on that day after she allegedly tripped and fell in the parking lot. (*Id.* ¶ 4.) Plaintiffs did not inform Roberts how Mrs. Hotard tripped and fell in the parking lot. (*SUMF* ¶ 8, Doc. 49-2.) Furthermore, he did not observe any broken, uneven or unlevel area of the parking lot around where Mrs. Hotard was sitting. (*Id.* ¶ 9.) Roberts did not recall any other trip and falls in the parking lot around where Mrs. Hotard allegedly fell. (*Id.* ¶ 10.)

Lastly, Malea Myers was employed as a Personnel Training Coordinator at the Sam's store during this time, though she was not working at the store on that particular day. (Myers Aff. ¶¶ 2–3, Doc. 49-8.) On or about the day after the incident, while Myers was working at the store, Myers received a phone call from Mrs. Hotard. (*Id.* ¶ 4.) Mrs. Hotard told Myers that she fell in the parking lot. (*Id.*) However, it is undisputed that Mrs. Hotard had no idea how the accident occurred nor how she fell. (*SUMF* ¶ 11, Doc. 49-2.) It is also undisputed that Meyers did not recall any broken, uneven or unlevel portions of the parking lot around where Mrs. Hotard allegedly fell and that Meyers did not recall any other trip and falls in the parking lot around where Mrs. Hotard allegedly fell. (*Id.* ¶¶ 12–13.)

## II.     Rule 56 Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears its burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations and emphasis omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal citations omitted). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

### III.  Discussion

#### A.  Parties' Arguments

Sam's argument can be boiled down to this: whether liability is premised on the Louisiana Civil Code article 2317.1 or the merchant liability statute, Louisiana Revised Statute 9:2800.6, "(a) Plaintiffs have no evidence that Sam's property had a condition that created an unreasonable risk of harm to persons on the premises and (b) Plaintiffs have no evidence that Sam's had actual or constructive knowledge of the risk." (Doc. 49-1 at 8.)  Sam's argues that, as a matter of law, minor deviations and variations in streets, sidewalks, and parking lots do not constitute unreasonable risks of harm, and, in any event, there is no evidence of any amount of variation in the parking lot in this case. (*Id.* at 9.)  Further, Sam's claims there's a four-part test to determine if something constitutes an unreasonable risk of harm, and cases have applied this test with minor sidewalk and parking lot defects and have found that they do not constitute unreasonable risks of harm. (*Id.* at 9–12.)  According to Sam's, Plaintiffs cannot prevail based on the facts of this case. (*Id.* at 13.)

Plaintiffs respond that there are questions of fact that preclude summary judgment. Plaintiffs point first to their petition and claim it shows that Mrs. Hotard fell on an uneven surface in the parking lot. (Doc. 55 at 2.) While in her deposition Mrs. Hotard could not identify what exactly she fell on, this "testimony is clear that it was a variance caused by an object underneath her foot and was inconsistent with a normal walking area that caused her to fall to the ground and become seriously injured." (*Id.* at 3.) Plaintiffs further note that Mrs. Hotard could not be expected to see what caused the problem when she was injured, and the Sam's employee should have done more than stand there and should have helped. (*Id.*) Plaintiffs assert:

> It would be reasonable to infer [t]he debris was there at least for probably overnight or longer. [T]his is safe to infer because she did not see debris falling as they drove into the parking lot, and the debris was already on the ground when she was walking towards the area from some distance away. [A]gain, another reasonable inference is that the debris observed in this case by Ms. Hotard, when taken into consideration with all other facts in the record, had been there for a very sufficient period of time to give the defendants notice in this case. Certainly, it had been there long enough to let this claim avoid dismissal by summary judgment on this issue.

(*Id.* at 4.) Plaintiffs further say that it can "easily be inferred . . . that Ms. Hotard did not fall on something in the parking lot that was a mere variance in adjoining concrete slabs of maybe less than an inch or so." (*Id.* at 5.)

Plaintiffs maintain, "The real question here is what the scope of the defendant's duty is as it relates to keeping its parking lot free from debris that would cause patrons to fall." (*Id.* at 6 (emphasis omitted).) Plaintiffs then cite *Broussard v. State*, 12-1238 (La. 04/05/13), 113 So. 3d 175, for the proposition that the issue of "whether a defect presents an unreasonable risk of harm is a question of fact for the jury to hear." (Doc. 55 at 6.) Plaintiffs assert:

> In this case the focus should be on the peril Ms. Hotard faced when she arrived at the area containing the unreasonably dangerous

condition (debris) and her attention was suddenly diverted by another dangerous condition, i.e. vehicle traffic.

Stated differently, what amount of debris in a parking lot is considered reasonable for a shopkeeper to have present, in so far as its duty to keep its patrons safe vs. peoples inability to navigate safely through the parking lot when faced with other hazards on the premises such as car traffic.

(*Id.* at 7.) Plaintiffs conclude by saying there is "evidence far beyond a preponderance which shows that Ms. Hotard has met her burden of proving a prima facie case that should go forward to trial in this matter." (*Id.*)

In reply, Sam's begins by re-urging its two main arguments: (1) there's no evidence Sam's had a condition that created an unreasonable risk of harm, and (2) there's no evidence that Sam's had actual or constructive notice of any such risk. (Doc. 58 at 1.) Plaintiffs' opposition is, for Sam's, speculative about what Mrs. Hotard fell on, as her testimony was that she did not know what caused the fall. (*See id.* at 2.) Sam's then cites case law purporting to find that a plaintiff's claim should be dismissed if he cannot identify what defect caused the fall. (*See id.* at 3–4.) Sam's claims that, without this information, the Court cannot determine if there was an unreasonable risk of harm or evaluate the temporal element of constructive notice. (*Id.* at 5.) Sam's is dismissive of Plaintiffs' argument that Mrs. Hotard's injuries preoccupied her thoughts so she didn't have to identify the defect, for that would defeat summary judgment in almost every case involving a retailer. (*Id.*) Again, Plaintiffs' reliance on "reasonable inferences" about how long the twig debris was on the ground is speculative; Plaintiffs need "positive evidence" that the condition was on the ground for some period of time to have constructive notice, and, Plaintiffs lack such evidence. (*Id.* at 6–7.) In any event, a temporary substance on the ground such as a twig does not constitute a defect, as that is not a flaw or fault inherent in the thing itself. (*See id.* at 7–8.) Further, dangerous drivers are not in Sam's control, and Sam's cannot be liable for such actors. (*Id.*) While the

question of whether something is an unreasonable risk of harm is tied to the facts, here, Plaintiffs have not identified a defect that could constitute same. (*Id.* at 9.)

### B. Law Generally and Summary of Ruling

"A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. Rev. Stat. Ann. § 9:2800.6(A). "This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." *Id.* "To prove a negligence claim against a merchant a plaintiff has the burden to show (1) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable, (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence, and (3) the merchant failed to exercise reasonable care." *Leonard v. Sam's W., Inc.*, No. 11-846, 2013 WL 121761, at *2 (M.D. La. Jan. 9, 2013) (Vance, J.) (citing La. Rev. Stat. Ann. § 9:2800.6(B)).

"To prove a claim under La. Civ. Code Ann. 2317.1, a plaintiff must show (1) that the defendant knew, or in the exercise of reasonable care, should have known of the defect which caused the damage, (2) that the damage could have been prevented by the exercise of reasonable care, and (3) that defendant failed to exercise reasonable care." *Id.* (citing La. Civ. Code Ann. 2317.1 (defining the basis for liability for damage caused by things under one's gardè)).

"Under either theory of liability, a plaintiff must prove: '(1) the defendant either owned or had care, custody, or control of the thing in question; (2) the thing was a cause-in-fact of the plaintiff's injuries; and (3) the thing presented an unreasonable risk of harm.' " *Id.* (quoting *Llorence v. Broadmoor Shopping Ctr., Inc.*, 76 So. 3d 134, 137 (La. Ct. App. 2001)).

Having carefully considered the matter, the Court finds that Sam's is entitled to summary judgment. As Sam's argued, Plaintiffs have failed to establish a genuine issue of material fact that (1) Mrs. Hotard tripped over a condition that presented an unreasonable risk of harm, and (2) that Sam's either created the hazard or had actual or constructive knowledge of the hazard.

### C. Causation and Unreasonable Risks of Harm

#### 1. Applicable Law

##### a. Generally

"To determine . . . whether a condition presented an unreasonable risk of harm[,] the Louisiana Supreme Court has adopted a risk-utility balancing test containing four factors: '(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.' " *Martin v. Boyd Racing, L.L.C.*, 681 F. App'x 409, 411 (5th Cir. 2017) (per curiam) (quoting *Bufkin v. Felipe's La., L.L.C.*, 14-0288 (La. 10/15/14); 171 So. 3d 851, 856). "The second factor 'focuses on whether the dangerous or defective condition is obvious and apparent.' " *Id.* (quoting *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13); 113 So. 3d 175, 184). "If the defective condition is obvious and apparent, a defendant generally does not have a duty to protect against it." *Id.* (citing *Bufkin*, 171 So. 3d at 856). "To be considered open and obvious, the hazard must 'be one that is open and obvious to all, i.e., everyone who may potentially encounter it.' " *Id.* (quoting *Broussard*, 113 So. 3d at 184).

In *Martin*, as here, plaintiff relied on certain language in *Broussard* to emphasize that the question of whether a condition is an unreasonable risk of harm should be left for the jury. *Martin*, 681 F. App'x at 412. *Broussard* specifically stated:

> We have described the question of whether a defect presents an unreasonable risk of harm as "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." As a mixed question of law and fact, it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether a defect is unreasonably dangerous.

*Id.* (quoting *Broussard*, 113 So. 3d at 183 (citation omitted)). *Broussard* "concluded that '[t]he record contain[ed] a reasonable factual basis to support the jury's finding the [defective condition] created an unreasonable risk of harm' such that the jury's determination was not manifestly erroneous." *Id.* (quoting *Broussard*, 113 So. 3d at 179).

But the Fifth Circuit rejected plaintiff's argument based on *Broussard* itself and later Louisiana Supreme Court cases. As to the former, the Fifth Circuit stated:

> In addition to the reasoning relied on by [plaintiff], the *Broussard* court acknowledged other decisions in which it stated that "[i]t is the court's obligation to decide which risks are unreasonable based on the facts and circumstances of each case." [*Broussard*, 113 So. 3d at 183 n.5 (quoting *Pryor v. Iberia Parish Sch. Bd.*, 10-1683, p. 4 (La. 3/15/11); 60 So. 3d 594, 596]. It noted that in one of those cases, decided on a motion for summary judgment, "it was the court's obligation . . . to decide if there was a genuine issue of material fact as to whether [the condition] created an unreasonable risk of harm." [*Id.*] Thus, the *Broussard* court recognized that on a motion for summary judgment, as here, the court *can* decide that a condition does not present an unreasonable risk of harm, as a matter of law.

*Martin*, 681 F. App'x at 412. As to the latter, the Fifth Circuit quoted *Bufkin*, which "explained that *Broussard* 'should not be construed as precluding summary judgment when no legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous.'" *Id.* (quoting *Bufkin*, 171 So. 3d at 859 n.3). Critically, the Fifth Circuit also relied on *Allen v. Lockwood*, 14-1724 (La. 2/13/15); 156 So. 3d 650 (per curiam), which said that "[a]ny reading of *Broussard* interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the *Broussard* case." *Martin*, 681 F. App'x at

412 (quoting *Allen*, 156 So. 3d at 652–653). "In both *Bufkin* and *Allen*, the court recognized that whether a condition created an unreasonable risk of harm was an appropriate issue for summary judgment." *Id.* at 413 (citing *Allen*, 156 So. 3d at 652–53; *Bufkin*, 171 So. 3d at 859 n.3). "In both cases, the court reversed the district court and granted summary judgment for the defendants, concluding that the at-issue conditions were 'obvious and apparent to anyone who may potentially encounter' them." *Id.* (quoting *Allen*, 156 So.3d at 653, and citing *Bufkin*, 171 So.3d at 858-59).

More specifically, in *Allen*, the Louisiana Supreme Court reversed the lower courts' denial of summary judgment where the plaintiff "failed to produce *any* evidence to rebut" defendants' evidence that a parking area had been "used . . . for decades without incident and the complained-of condition . . . was obvious and apparent to anyone who may potentially encounter it." *Allen*, 156 So. 3d at 653. Plaintiff also failed to "demonstrate how the alleged defects caused the incident" or what the "defendants did to cause the accident." *Id*. The Supreme Court concluded, "as there is no genuine issue as to whether the parking area was unreasonably dangerous, the church defendants are entitled summary judgment in their favor as a matter of law." *Id.*

Likewise, in *Martin*, plaintiff alleged that she "slipped and fell on algae that had accumulated on the ground" of the parking lot of a hotel, racetrack, and casino owned and operated by the defendant. *Martin*, 681 F. App'x at 410. In affirming the district court's granting of summary judgment, the Fifth Circuit stated that defendant had "produced evidence that the algae were obvious and apparent, such that it owed no duty to [plaintiff]. [Plaintiff] did not produce any evidence to the contrary and has thus failed to make a showing sufficient to establish the existence of an essential element of her claim." *Id.* at 413. Consequently, "[s]ummary judgment for [the defendant] was appropriate." *Id.*

*b.* Variations in Sidewalks and Parking Lots

Turning to the specific situation at hand, the *Leonard* court gave an extensive discussion of Louisiana Supreme Court cases that have addressed "whether variations in the surface of sidewalks or parking lots constitute an unreasonable risk of harm," with a particular emphasis on *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98); 708 So. 2d 362. *Leonard*, 2013 WL 121761, at *2. *Reed* explained:

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.

*Leonard*, 2013 WL 121761, at *2–3 (quoting *Reed*, 708 So. 2d at 363). Again, *Reed* considered the above factors in determining whether a paving defect constituted an unreasonable risk of harm, including "the size of the defect, its location, and the accident history of the defect" as well as the "gravity and risk of harm against the cost and feasibility of repair, social utility, and individual and societal rights and obligations." *Id.* at *3 (citing in part *Reed*, 708 So. 2d at 363–64). "In *Reed*, the Court observed that 'the utility of paved parking lots is clearly apparent' and that the cost of maintaining the surface free from defects is 'cost-prohibitive.' " *Id.* (citing *Reed*, 708 So. 2d at 365–57). *Leonard* then observed:

> Furthermore, in the summary judgment context, Louisiana courts have not hesitated to grant summary judgment in favor of defendants in cases in which the nature of the condition is undisputed, and plaintiff has provided no evidence of any unusual feature of the condition suggesting that it is unreasonably dangerous. *See, e.g., Dowdy v. City of Monroe*, 78 So. 3d 791, 798–799 (La. Ct. App. 2011) ("A review of the jurisprudence reveals that the appellate courts have resolved on motions for summary judgment the issue of whether a condition presented an unreasonable risk of danger.");

> *Leonard v. Parish of Jefferson*, 902 So. 2d 502 (La. Ct. App. 2005)
> (affirming trial court's grant of summary judgment where plaintiff
> slipped on a sidewalk height differential of over one inch); *Reitzell
> v. Pecanland Mall Assocs.*, 78 So .3d 1229, 1233–34 (La. Ct. App.
> 2003).

*Id.*

In *Leonard*, Judge Vance granted summary judgment in favor of defendant when plaintiff slipped on an eight-inch-long depression in a parking space. *Id.* The *Leonard* court first noted that the depression had an average depth of five-eighths of an inch and that other cases have found that similar depressions and variances in walkways were not unreasonably dangerous under the circumstances. *Id.* (citations omitted). Judge Vance next stated that the "location of the depression" (a parking space rather than a designated walking area) and the "absence of accident history" (where the accident at issue was the only reported incident) "suggest[ed] that the likelihood and magnitude of potential harm were low." *Id.* (citing, *inter alia*, *Llorence*, 76 So. 3d at 137 (noting that "there had been no claims, complaints, or suits arising out of the area either before or since the plaintiff's claim" when holding that an area was not unreasonably dangerous on summary judgment). Next, Judge Vance wrote:

> Third, under similar circumstances, the Louisiana Supreme Court
> has recognized that although the cost of repair of a particular
> depression might be minimal, the "cost to eliminate all such minor
> defects is staggering." *Reed*, 708 So. 2d at 366. The Court further
> noted that the cost of "maintain[ing] such surfaces free from defects
> is likely impossible, and is certainly cost-prohibitive." *Id.; see also
> Boyle*, 685 So. 2d at 1083–84.

*Id.* at *4. Lastly, "as Louisiana courts have repeatedly affirmed, a paved parking lot has social utility and is not dangerous by nature." *Id.* (citing, *inter alia*, *Dowdy*, 78 So. 3d at 799 ("Clearly, the use of the public facility by the plaintiff and all pedestrians has social utility."). Based on all

this, the Court determined that "plaintiff's evidence of the depression in the parking lot [was] not sufficient to create a genuine issue of fact of whether it was unreasonably dangerous." *Id.*

*c.*  <u>Failure to Identify the Object</u>

Additionally, Louisiana courts have also granted summary judgment when plaintiffs have failed to establish on what object they fell.  For example, in *Mooty v. Ctr. at Westbank LLC*, 10-792 (La. App. 5th Cir. 3/29/11); 63 So. 3d 1062, the appellate court affirmed the granting of summary judgment when the plaintiff claimed to have tripped over a tire stop. *Id*. at 1067–68. Plaintiff "clearly stated that she did not know what caused her to fall ('I tripped on something, but I don't know what it is.' 'I don't know why I fell.' 'I believe I caught on something and it tripped me.')." *Id.*  Further, "[i]n response to a direct question, she unequivocally denied trying to step over the tire stop ('No. I wasn't a fool trying that.')." *Id.*

Likewise, in *Ton v. Albertson's, LLC*, 50,212 (La. App. 2d Cir. 11/18/15); 182 So. 3d 246, the appellate court affirmed the granting of summary judgment to a store after a patron fell outside of it.  The appellate court explained:

> In his deposition, Mr. Ton admitted that he could not say exactly where his wife fell or where she was when he saw her on the ground. He took photographs of the area a day or two after the incident. One photograph attached to his deposition excerpt shows a measurement of the small crack along the expansion joint where he thought his wife tripped. But when asked to circle the general area of where he saw her on the ground, he responded, "You're kidding?"

> In her deposition, Mrs. Ton said that her foot hit something or seemed to go into something when she fell. However, she did not identify what that something may have been. She testified that she was in pain as she sat on the ground after falling. She recalled that she was facing the building and was catercorner, but she did not remember anything about the ground. She could not say for certain where she fell.

> Neither of the Tons noticed a crack or other defect in the concrete when Mrs. Ton fell. The alleged hazard—the small crack along the

15

expansion joint—was identified a day or two later when Mr. Ton returned to Albertsons to take photographs. As stated, neither of the Tons could say where Mrs. Ton fell. They merely speculate that the small crack was what her right foot either hit or went into.

. . .

[T]he Tons' speculation that Mrs. Ton tripped on the small crack along the expansion joint cannot provide the factual support necessary to show that they would be able to meet the burden of proving causation at a trial. The after-the-fact identification of the small crack along the expansion joint as the alleged cause of the fall, particularly when the plaintiffs could not recall where Mrs. Ton fell, is not circumstantial evidence that creates a genuine issue for trial. Because there is no genuine issue of material fact as to causation, summary judgment in favor of Albertsons was properly granted.

*Id.* at 250–251.

### 2. Analysis

Having carefully considered the matter, the Court will grant summary judgment in favor of Sam's.  As Sam's argues, Plaintiffs have failed to establish a genuine issue of material fact that there was an unreasonable risk of harm.

First, Plaintiffs have failed to show on what object Mrs. Hotard tripped.  Again, Mrs. Hotartd testified:

I was – I was – well, with me being there, I was kind of watching the traffic because I was trying to get in the store.  But I don't know.  It was under the tree. I just – when I felt something on my shoe, I immediately hit the ground.  I don't know if it was the pavement had some kind of that black tar, if it was a twig, because it was near the tree.  And it happened so fast, honestly, I don't remember.  But my shoe left the ground and 170 pounds hit it before it – it was so quick, I can't tell you what it was.

(Mrs. Hotard Dep. 33–34, Doc. 49-4 at 6–7.)  She testified about "debris" on the ground that looked like "every ordinary debris, little pieces of twig.  I think it had some little cone-type things because it looked like that was on the ground, but just regular debris." (*Id.* at 40.)  She then said:

Q. When did you first notice that debris?

A. When I was approaching the tree, I saw it, but it didn't – it didn't bother me because I walk all the time and it wasn't nothing I would have been afraid to walk through. But as to say exactly what it was, I really can't tell you.

Q. So you're not sure if you actually tripped on that debris that you're referring to?

A. Correct. Yes

(*Id*.) Lastly, she saw a crack in the pavement that "had some black tar in it," but she did not recall whether she tried to walk around it or over it. (*Id.* at 40–41.)

As in *Mooty* and *Ton*, the Court finds Plaintiffs "cannot provide the factual support necessary to show that they would be able to meet the burden of proving causation at a trial." *Ton*, 182 So. 3d at 251. Plaintiffs cannot say whether the accident was caused by a crack in the pavement, a twig, or some unknown debris. Mrs. Hotard's testimony is as weak on these issues as that of the *Mooty* and *Ton* plaintiffs. And, like *Ton*, Mr. Hotard's account is equally unavailing. (*See SUMF* ¶¶ 6–7, Doc. 49-2 (stating that Mr. Hotard did not see the fall or anything on the ground that may have caused the fall).) Just as summary judgment was warranted in those cases, so too is it warranted here.

Second, *Leonard* also compels a conclusion that summary judgment is warranted here. Without more information about what Plaintiff fell on, the Court cannot possibly undertake the kind of factual analysis discussed by the Louisiana Supreme Court and exemplified by the *Leonard* case. However, it must be emphasized that many of the factors highlighted by Judge Vance in her granting of summary judgment are prevalent here. As in *Leonard*, there are no other reported incidents at this location. *See Leonard*, 2013 WL 121761, at *3 (citations omitted); *SUMF* ¶¶ 9–10, 12–13, Doc. 49-2. Further, the "cost to eliminate all such minor defects is staggering" and "the

cost of maintain[ing] such surfaces free from defects is likely impossible, and is certainly cost-prohibitive." *Leonard*, 2013 WL 121761, at *3 (quoting *Reed*, 708 So. 2d at 366). Lastly, the parking lot "has social utility and is not dangerous by nature." *Id.* at *4 (citations omitted). Between the absence of evidence in Plaintiffs' favor, and the presence of many factors in favor of Sam's, summary judgment is appropriate.

Rather, this case is much closer to *Allen* and *Martin*. As in those cases, Plaintiffs have failed to present *any* summary judgment evidence demonstrating an issue of fact for trial.

Plaintiffs urge that, under *Broussard*, whether something is an unreasonable risk of harm is a question of fact and that this should preclude summary judgment (Doc. 55 at 6), but, as amply detailed above and in *Allen* and *Martin*, courts are allowed to grant summary judgment when a plaintiff fails to present any evidence demonstrating that a condition presents an unreasonable risk of harm. *See Martin*, 681 F. App'x at 412 (discussing *Broussard* and subsequent caselaw); *Allen*, 156 So. 3d at 653. Such is the case here, as Plaintiffs cite to no specific record evidence on this issue and as, indeed, it is undisputed that "Plaintiffs have no evidence that Sam's property had a condition that created an unreasonable risk of harm to persons on the premises." (*SUMF* ¶ 1, Doc. 49-2.) Thus, again, Plaintiffs have failed to present evidence establishing that there is a genuine issue of material fact for trial. [2]

For all these reasons, the Court finds that Sam's is entitled to summary judgment as a matter of law. Consequently, the *MSJ* will be granted, and Plaintiffs' claims will be dismissed with prejudice.

---

[2] There are circumstances in which whether a given condition is "open and obvious" or poses an unreasonable risk of harm is properly left to the jury. *See Covey v. Seifert*, No. 18-99, 2019 WL 303008, at *11–12 (M.D. La. Jan. 23, 2019) (deGravelles, J.) (citing *Allen* and stating that "*Broussard* is not a per se bar to summary judgment in open and obvious cases," but ultimately finding that "[u]nlike *Allen*, this is a case where there is some summary judgment evidence which at least creates a question of fact on this issue."). This case is not one of them.

### D. Created Hazard or Actual or Constructive Notice of the Hazard

#### 1. Applicable Law

Again, "[u]nder the relevant statute for premises liability, Louisiana Revised Statute Annotated § 9:2800.6(B)(2), a business either must have created or had [actual or] constructive notice of the hazardous condition prior to the accident in order to be liable for injuries to a customer." *Lee v. Dolgencorp, L.L.C.*, 784 F. App'x 285 (5th Cir. 2019) (mem.) (per curiam).

" 'Constructive notice' means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. Rev. Stat. Ann. § 9:2800.6(C)(1). To prove constructive notice, Plaintiff has the burden to "come forward with 'positive evidence' showing the damage causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence." *Batiste v. United Fire & Cas. Co.*, 17-482 (La. App. 5th Cir. 3/14/18); 241 So. 3d 491, 498 (citing *Flowers v. Wal-Mart Stores, Inc.*, 12-140, (La. App. 5th Cir. 7/31/12); 99 So. 3d 696, 699). "[M]ere speculation that the condition may have existed for some period of time is insufficient." *Id.* (citing *Babin v. Winn-Dixie La., Inc.*, 00-0078, (La. 6/30/00); 764 So. 2d 37, 40). "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period." *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97); 699 So. 2d 1081, 1084. "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." *Id.* "Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time

period prior to the fall." *Id.* at 1084–85. "This is not an impossible burden." *Id.* at 1085 (citation omitted).

Thus, for example, in *Leverson v. BJ's Restaurants, Inc*., No. 18-751, 2019 WL 6841974 (M.D. La. Dec. 16, 2019) (deGravelles, J.), this Court granted summary judgment in a slip and fall case because plaintiff had failed to create a question of fact as to whether the defendants "either created the condition or had actual or constructive notice of" water on the floor of a restaurant. *Id.* at *6. There was no evidence that defendants created the hazardous condition, and the employee demonstrated he had no actual knowledge of the condition. *Id.* Relevant here, for constructive notice, this Court found:

> [N]o reasonable juror could conclude that Defendants knew or should have known about the water a few feet from the door solely because it *could have* been tracked from the bathroom. *See* [*Mohammad v. P.F. Chang's China Bistro*, 548 F. App'x 236, 238–39 (5th Cir. 2013)]. In any event, again, the time requirement has not been met, as there is no evidence as to how long the water was on the floor, much less that it was there so long that Defendants should have discovered it in the exercise of reasonable care. *See Lee*, 784 F. App'x 285; *Mohammad*, 548 F. App'x at 239 ("The Mohammads have similarly presented no evidence that the liquid in this case was on the floor for any length of time—let alone that that time was sufficient that the restaurant have discovered its existence through the exercise of ordinary care. As a result, there is no issue of material fact regarding constructive notice.").

*Id.*

### 2. Analysis

Even assuming Plaintiffs had established an unreasonable risk of harm, they have failed to present competent summary judgment evidence showing that Sam's either created that risk or had actual or constructive knowledge of it. Plaintiffs point to zero evidence that Sam's created the hazard. Further, it is undisputed that Roberts and Myers did not recall any other trips and falls in the parking lot around where Mrs. Hotard fell and that Myers did not recall any broken, uneven or

unlevel portions of the parking lot around where Mrs. Hotard allegedly fell. (*SUMF*, ¶¶ 10, 12–13, Doc. 49-2.)  Thus, Plaintiffs must rely on constructive knowledge.

But they fail their burden on this issue as well.  Plaintiffs argue that the Court should infer that the debris was on the parking lot floor for a long time because Plaintiffs were some of the first customers that morning, but this is mere speculation.  As in *Leverson* and the cases *Leverson* relied upon, "there is no evidence as to how long [any hazard] was on the [ground], much less that it was there so long that [Sam's] should have discovered it in the exercise of reasonable care." *Leverson*, 2019 WL 6841974, at *6 (citations omitted).

Without more, Plaintiffs have, again, failed to create a question of fact for trial.  For this additional reason, Sam's is entitled to summary judgment.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment on Behalf of Sam's East, Inc.* (Doc. 49) filed by Defendant Sam's East, Inc., is **GRANTED**, and Plaintiffs' claims against Sam's are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on June 30, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**